UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICTOF MICHIGAN

_____/

DERRON SIMON,

    Petitioner,                  CASE NO.

v

BUREAU OF PRISONS, and,
TRACY DECAUSSIN, in her official capacity as Jail Administrator of St. Clair County Jail,

    Respondent.

_____/

## PETITION FOR WRIT OF HABEAS CORPUS & EMERGENCY INJUNCTIVE RELIEF THROUGH IMMEDIATE RELEASE PURSUANT TO 28 USC §2241

NOW COMES, Petitioner Derron Simon ("Petitioner"), by and through undersigned counsel, states the following complaint against Respondent:

### FACTS

Petitioner Derron Simon was sentenced to 180 months in the BOP on March 6, 2015, for violations of 21 U.S.C. §§ 841, 846, and 859 in the Eastern District of Virginia. After serving 10 years of the sentence, Mr. Simon was released to a halfway house in the State of Michigan. Mr Simon obtained employment, a residence, and

1

began reconnecting with his family. In March of 2025 Mr. Simon was granted home confinement pursuant to the First Step Act (FSA). During the holiday season on December 27, 2025, Mr. Simon was granted a social pass to a specific address in Detroit, MI to spend time with his children from 4pm to 7pm. Mr. Simon went to three different locations and returned home at 9:44pm. As a result on January 2, 2026, an incident report outlined the conduct and Mr. Simon was ordered to return to the halfway house, which he did. At a later UDC hearing, Mr. Simon was found to have violated his home confinement and charged with escape. On January 8, 2026, Mr. Simon was booked into the St. Clair County Jail with a current release date of July 24, 2026.

## INTRODUCTION

This habeas petition challenges the Bureau of Prisons' (BOP) misclassification of a minor, technical deviation by an individual participating in Home Confinement under the FSA as a 200-Series "Escape" violation, resulting in immediate return to custody without a disciplinary hearing. Additionally, Petitioner asserts due process was violated in the imposition of confinement with proper hearings and determinations. Finally, Petitioner will suffer irreparable harm if the decision to incarcerate stands. Mr. Simon is a non-violent offender.

## CONDUCT

Escape is a "voluntary departure" from custody which requires that the escapee have knowledge that his/her actions would result in his/her leaving physical confinement without permission. See *United States v. Bailey*, 444 U.S. 394 (1980); *United States v. Tapio*, 634 F.2d 1092 (8th Cir. 1980); *United States v. Cluck*, 542 F.2d 728 (8th Cir.), *cert. denied*, 429 U.S. 986 (1976); *United States v. Nix*, 501 F.2d 516 (7th Cir. 1974). Mr. Simon did not escape from custody; he voluntarily returned to his home address five days before any incident report was created. He was 2 hours late for his return, but he did not depart from custody at any time. The conduct at issue, a brief deviation from an authorized "out and about" pass location to a nearby eatery in close proximity to the approved site, followed by return to the authorized residence, does not, as a matter of law or regulation, constitute "escape." Instead, this conduct falls, at most, within the 300-Series "Out of Bounds" (Code 316) category, a minor administrative infraction traditionally subject to UDC-level review and corrective guidance, not custody escalation. The BOP's contrary treatment reflects a theory of constructive custody untethered from statutory elements, undermines the *First Step Act*'s reintegration mandate, and deprives Petitioner of due process by bypassing all disciplinary fact-finding.

## STATUTORY AND REGULATORY FRAMEWORK

**I.      Escape Under Federal Law Requires Departure from Custody.**

Under 18 U.S.C. § 751(a), "escape or attempt to escape from the custody of the Attorney General or from any institution or facility in which he is confined." Federal courts consistently hold that escape requires a meaningful departure from custody, not mere technical noncompliance with conditions. *See* ***United States v. Bailey***, 444 U.S. 394, 407 (1980) (escape requires "voluntary departure from custody").

**II.     Home Confinement Under the First Step Act Is Constructive Custody.**

Home Confinement under the First Step Act, Pub. L. No. 115-391, § 602, is a form of constructive custody, not institutional confinement.

BOP Program Statements recognize that individuals on Home Confinement:

- Remain under BOP supervision,
- Are permitted authorized movement pursuant to passes, and
- Are not confined to a fixed institutional perimeter.

Thus, custody is maintained through supervision, not geography alone.

## THE "NO ESCAPE" THEORY OF CONDUCT

**I. Escape Requires a Specific "Quality of Movement."**

The "No Escape" theory posits that escape requires more than physical movement. It requires a qualitative severance from custody. Courts assessing escape look to the intent to flee supervision, failure to return, loss of contact, or conduct

4

evidencing abandonment of custody. See *United States v. Tapia*, 981 F.2d 1194 (11th Cir. 1993) (failure to return to halfway house constituted escape because defendant did not return). Here, none of those elements exist.

**II.     Close Proximal Deviation Does Not Sever Constructive Custody.**

The conduct at issue involved:

- Authorized release under an "out and about" pass,

- A deviation to an eatery in close geographic proximity to the approved location, and

- Return to the authorized residence, albeit approximately 30 minutes late.

This is not a departure from custody it is continued participation in custody. The "quality of place," remaining within the immediate sphere of authorized movement, never changed.

## DISTINCTION BETWEEN ESCAPE AND ABSCONDING

**I.     BOP Directives Distinguish Severity Levels.**

BOP disciplinary policy (including Program Statement 5270.09) establishes graded categories:

- 200-Series: Escape, absconding, or intentional failure to return

- 300-Series (Code 316): Being "out of bounds" or exceeding authorized limits

This hierarchy exists precisely to prevent overcriminalization of technical deviations.

### II.   Absconding Requires Loss of Supervision

"Absconding" in the community corrections context generally requires:

- Failure to return, or

- Loss of contact with supervision.

See *United States v. Burke*, 694 F.3d 1062 (9th Cir. 2012). Petitioner remained reachable, returned home, and never abandoned supervision. Thus, even absconding is unsupported, much less escape.

### CASE LAW SUPPORTING NON-ESCAPE CLASSIFICATION

*United States v. Bush*, 110 F.4th 1246 (11th Cir. 2024): escape requires willful departure, not technical noncompliance; In *Bush,* the defendant was convicted of escaping from a residential-reentry center following a jury trial. On appeal defendant argued that the jury was improperly instructed on the mens rea required to convict him. The court vacated the conviction and remanded the case for a new trial. The court stated the [g]overnment must show that the accused failed to return '*knowingly*,' '*willfully*' and '*unlawfully*.'" *Id. at 1252*. This case reflects the principle that not every violation of movement restrictions is escape.

### DUE PROCESS

*Wolff v. McDonnell*, 418 U.S. 539 (1974), guarantees minimum due process protections in prison disciplinary actions affecting liberty interests. Mr. Simon had a UDC hearing in which they clearly determined a violation resulting in a custodial

sentence. Mr. Simon has a right to appeal the UDC result to the DHO within 20 days of the hearing, however, Mr. Simon has not been provided the UDC findings in order to appeal. UDC is the Proper Forum for 300-Series Conduct. The Unit Discipline Committee (UDC) is the BOP body charged with: reviewing minor violations, making factual findings, and applying proportionate sanctions. By recharacterizing conduct as 200-Series escape, Detroit-area RRCs strip UDC of jurisdiction, mandate return to custody, and eliminate fact-finding entirely. Here, Petitioner was returned to custody, without a formal disciplinary hearing, without findings of intent, and without an opportunity to contest classification.

## **IRREPARABLE HARM**

Mr. Simon will lose his gainful employment if he remains in custody. In addition, he will lose his housing, and limit restoration of his familial ties. The BOP places inmates in Residential Reentry Centers prior to release to help them adjust to life in the community and find employment. Recidivism is lower within employed former inmates with stable housing.[1] Incarceration will cause the collapse of the reentry plan for Mr. Simon.

---

[1] Council on Criminal Justice, "Does Stable Employment Post-Release Reduce Recidivism?", By Simon Kolbeck (2023).

7

## ADMINISTRATIVE REMEDIES

Petitioner cannot exhaust his administrative remedies without suffering irreparable harm. Based on the time allotted for responses any administrative remedy would be futile. A party may proceed without exhausting administrative remedies in conditions where the administrative procedure would be futile. Although exhaustion is generally a prerequisite for § 2241 habeas relief, it is not a jurisdictional requirement. See Clayton v. Gibson, 199 F.3d 1162, 1170 (10th Cir. 1999) ("The exhaustion requirement is not jurisdictional, however, and may be waived by the state or avoided by the petitioner if an attempt to exhaust would be futile."). Here, petitioner is scheduled for release in July 2026, he would not have completed all three stages of administrative remedies by that time. Further, any harm would already have been done in the form of a complete collapse of his re-entry plan; loss of employment, loss of housing, loss of family connections, and other undetermined harm stemming from incarceration.

## REQUESTED RELIEF

1. Immediate restoration to Home Confinement;

2. Expungement of escape classification;

3. Declaration that the conduct does not constitute escape;

4. Injunction barring custody escalation absent UDC adjudication.

**EMERGENCY INJUNCTIVE RELIEF**

I. **PETITIONER IS LIKELY TO SUCCEED ON THE MERITS OF HIS DUE PROCESS CLAIM**

A. **The Government Deprived Petitioner of a Protected Liberty Interest Without Process.**

The Sixth Circuit recognizes that a prisoner or supervisee has a protected liberty interest when government action results in a material change in the conditions or execution of sentence, including transfer from community placement to custodial confinement.

See *Townsend v. Burke*, 334 U.S. 736, 741 (1948) (custody decisions based on materially inaccurate characterizations violate due process); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (conditional liberty interests trigger due process protections) *United States v. Stephenson*, 928 F.3d 813, 818 (6th Cir. 2019) (revocation or modification of community liberty implicates due process). Here, Petitioner was removed from *First Step Act* Home Confinement and returned to BOP custody, an indisputable deprivation of liberty, without any adjudicatory process.

B. **Misclassification as "Escape" Functioned as a *De Facto* Adjudication Without a Hearing.**

The Sixth Circuit has repeatedly held that procedural due process cannot be avoided through labeling or administrative shortcuts. See *Hicks v. Oklahoma*, 447

U.S. 343, 346 (1980) (due process violated where statutory procedures are bypassed); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995) (classification decisions that impose atypical and significant hardship require process).

In this case, Detroit-area Residential Reentry Centers recharacterized alleged conduct as a 200-Series "Escape" rather than a 300-Series "Out of Bounds" violation. That misclassification automatically stripped the Unit Discipline Committee (UDC) of jurisdiction, mandated immediate return to custody, eliminated all fact-finding, and foreclosed any opportunity to contest intent, proximity, or compliance. This was not a neutral administrative decision. It was a substantive adjudication carried out without procedural safeguards.

**C. Sixth Circuit Law Requires Fact-Finding Before Custody Escalation.**

Under Sixth Circuit precedent, when custody escalation turns on disputed factual characterizations, minimal due process requires: Notice of the allegation, an opportunity to be heard, and a neutral decision-maker. *Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1974). In Wolff an inmate challenged the prison's policy about taking "good time" from inmates as a disciplinary sanction. The Court held that the inmates' interest in disciplinary procedures was protected by the Fourteenth Amendment because the right to good time and its deprivation as a sanction was provided by state statute. Due process required provision of advance written notice of the claimed violation, a written statement of the evidence relied upon, and the reasons for the

10

disciplinary action. The inmate had to be allowed to call witnesses and present evidence when to do so would not be unduly hazardous to institutional safety or goals. *Id. at 542*. Here, Petitioner received none of these protections. The government's position that labeling conduct as "escape" eliminates the need for process cannot be reconciled with the law.

## II.   THE DUE PROCESS VIOLATION IS STRUCTURAL AND ONGOING

### A. Bypassing the UDC Eliminates the Only Authorized Fact-Finding Mechanism.

BOP regulations vest initial disciplinary authority for 300-Series violations in the UDC, not RRC staff acting unilaterally. By escalating the allegation to a 200-Series violation without factual development, the government removed Petitioner from community placement, imposed custody sanctions without a record, findings, or mens rea determination. The Sixth Circuit has made clear that structural deprivation of process, even temporarily, constitutes irreparable constitutional harm. A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief. *Obama for Am. v. Husted*, 697 F.3d 423, 425 (6th Cir. 2012).

## III. PETITIONER WILL SUFFER IRREPARABLE HARM ABSENT IMMEDIATE RELIEF

It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury for purposes of injunctive relief. *Betschart v. Oregon*, 103 F.4th 607, 612 (9th Cir. 2024). Petitioner's harm includes loss of lawful home confinement, termination of reentry employment, housing instability, and family reintegration collapse. None of these harms can be undone after the fact. Granting relief preserves lawful custody status, ensures accurate classification, upholds the *First Step Act*'s reintegration goals, and imposes no risk to public safety. Denying relief rewards procedural shortcuts and administrative overreach.

## **RELIEF REQUESTED**

For purposes of emergency injunctive relief only, Petitioner respectfully requests:

- Immediate restoration to First Step Act Home Confinement;

- An order prohibiting custody escalation absent UDC adjudication;

- A declaration that misclassification without a hearing violates due process.

                Respectfully submitted,

By: /s/<u>Barton W. Morris, Jr.</u>
     Barton W. Morris, Jr. (P54701)
     The Law Offices of Barton Morris
     Attorney for Petitioner
     801 W. Big Beaver Rd., Suite 600
     Troy, MI 48084
     (248) 541-2600

Dated: January 22, 2026